TOWN OF EPPING *& a.*

v.

ST. PAUL FIRE AND MARINE INSURANCE CO. *& a.*

March 19, 1982

*Kearns & Colliander*, of Exeter (*Peter F. Kearns* and *Alice S. Love* on the brief, and *Mr. Kearns* orally), for the plaintiff.

*Barto & Gfroerer*, of Concord (*John W. Barto* on the brief and orally), for intervenor Patrick Jackson.

*Orr & Reno P.A.*, of Concord (*Ronald L. Snow* on the brief and orally), for intervenors Roger C. Vogler, Dorothy K. Hall, Harold K. Lapierre, Richard F. Sanborn and William A. Callaway.

*Sanders & McDermott P.A.*, of Hampton (*Wilfred L. Sanders, Jr.*, on the brief and orally), for Wilfred L. Cloutier, as amicus curiae.

*Aeschliman & Tober*, of Portsmouth (*Nicholas R. Aeschliman* on the brief and orally), for the defendant Maine Bonding & Casualty Co.

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*Eugene M. Van Loan, III*, on the brief and orally), for the defendants St. Paul Fire and Marine Insurance Company and Maine Bonding & Casualty Co.

BROCK, J. This case arises out of a petition for declaratory judgment brought under RSA 491:22 by the Town of Epping against its insurers, St. Paul Fire and Marine Insurance Company (St. Paul) and Maine Bonding and Casualty Company (Maine Bonding). The town seeks a ruling on the extent of its insurance coverage for civil rights violations. (Title 42 U.S.C. § 1983.)

The principal issues are (1) whether this court's holding in *Town of Goshen v. Grange Mut. Ins. Co.*, 120 N.H. 915, 424 A.2d 822 (1980), requires that coverage be afforded to the Town of Epping and its officials, and (2) whether there is sufficient evidence in the record to support the trial court's finding that the town, through its selectmen, specifically intended not to purchase coverage for complaints involving the denial of civil rights.

From July 1971 to July 1975, the Town of Epping's liability insurance was provided by the defendant Maine Bonding. The Maine Bonding policies, renewed on an annual basis, were general liability policies. They included a standard form Personal Injury Liability endorsement which provided coverage for certain specified tort claims defined as "personal injuries":

1. false arrest, detention or imprisonment, or malicious prosecution,
2. libel, slander, defamation, or violation of rights of privacy,
3. wrongful entry or eviction, or other invasions of the right of private occupancy.

In March 1974, in an effort to reduce the cost of the town's insurance, the town meeting voted to place the town's insurance up for bidding in the spring of 1975. During the interim year, the town received much advice concerning its insurance coverages. First, in May 1974, the general agent for Maine Bonding advised the town's insurance agent that the New Hampshire Legislature had adopted RSA 31:106 and :107, requiring all municipalities to indemnify their officers and agents for federal civil rights claims and authorizing them to purchase insurance for such purpose. *See* Laws 1973, 595:1. He advised the town's agent to recommend that the town purchase such coverage, which was offered by endorsement by another insurance company. Further, in January 1975, town counsel informed the selectmen that the common-law defense of sovereign immunity for municipalities had been eliminated by decision of the New Hampshire Supreme Court in *Merrill v. Manchester*, 114 N.H. 722, 729, 332 A.2d 378, 383 (1974), and that insurance coverage was available to protect the town against its new potential liability. In addition, during the fall of 1974 and the early spring of 1975, the selectmen reviewed the town's existing insurance program with various insurance agents to aid them in preparing bid specifications.

After reviewing the suggestions made by different insurance agents, the selectmen decided to keep essentially the same coverage provided by their Maine Bonding policy, and they prepared their bid specifications accordingly. They decided to maintain "personal injury coverage" under the same type of standard form Personal Injury Liability endorsement provided by the Maine Bonding policies; however, their principal reason for doing so was to protect the town's police from claims of false arrest.

A number of bids actually received by the town included quotations for coverages not requested in the bid specifications. Among those quotations were special coverages for claims arising out of

official misconduct. Those coverages were referred to as "error and omissions" coverage, "public official liability" coverage and/or "civil rights" coverage. Again, the selectmen were advised as to the protection such coverages would afford the town, albeit at considerable additional expense.

The selectmen, nevertheless, persisted in their initial decision not to change the town's existing coverage and accepted a bid that was in accord with their specifications. The insurance agent who submitted the successful bid placed the risk with American Policyholders, which issued a policy providing coverage under the standard general liability forms, including the Personal Injury Liability endorsement. The policy did not contain any of the special endorsements providing for additional coverage for claims of official misconduct.

In May 1976, the American Policyholders' policy was cancelled when the town's insurance agent severed its relationship with that company. The insurance agent then replaced that policy, without any changes in coverage, with one issued by St. Paul. The town renewed the St. Paul policy on its expiration date, May 1, 1979, for one year.

In October 1976, the underlying plaintiff, Mr. Cloutier, filed his complaint against the town and its officials in the federal district court, alleging violations of 42 U.S.C. § 1983 and the fourteenth amendment to the United States Constitution. Mr. Cloutier is the owner of a mobile home park in the town of Epping. His dispute with the town began in 1972 when, he alleges, town officials committed several wrongful acts (including denial of sewer permits, wrongful commencement of action against him, and wrongful taking of his property) in an effort to prevent him from developing his mobile home park. Between October 1976 and December 1980, Cloutier amended his original complaint a number of times, adding new causes of action, new plaintiffs, and new defendants. At the present, the case is still pending in federal court. Neither the town or any of its representatives notified the insurers, Maine Bonding and St. Paul, of the Cloutier suit until April 1980. When both insurance companies refused to provide coverage, the town commenced the present declaratory judgment action.

The Superior Court (*Temple*, J.) ruled that because the town had purchased coverage with full knowledge and understanding that the coverage purchased did not afford protection against claims for alleged civil rights violations, "the town was not faced with the lack of definitional clarity as to the scope of coverage" present in the case of *Town of Goshen v. Grange Mut. Ins. Co.*, 120 N.H. 915, 424 A.2d 822 (1980), and therefore no coverage existed. We agree.

The plaintiff asserts that this court is bound to find coverage because its endorsement for personal injury liability coverage is identical to an endorsement which we construed in favor of the insured in *Town of Goshen v. Grange Mut. Ins. Co.*, 120 N.H. 915, 424 A.2d 822 (1980). In *Town of Goshen*, we construed the language "other invasions of the rights of private occupancy" in the standard form Personal Injury Liability endorsement to include civil rights violations. Because we found that the quoted language lacked definitional clarity as to the scope of coverage, we held that the policy should be construed against the company and in favor of the insured. *Id.* at 918, 424 A.2d at 825 (citing *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771–72, 423 A.2d 980, 985 (1980)). "Had [the insurer] wished to exclude coverage for invasion of private property when framed in a section 1983 action, it could have done so by explicit language in the policy." *Town of Goshen v. Grange Mut. Ins. Co.*, 120 N.H. at 918, 424 A.2d at 825 (citations omitted). We thus held in *Town of Goshen* that the Personal Injury Liability endorsement provided coverage for civil rights violation claims.

■ Although the policy language at issue in the present case is identical to the language we construed in *Town of Goshen*, we hold that this case is distinguishable from *Town of Goshen* because the Town of Epping expressly rejected coverage for claims of official misconduct. Consequently, no coverage exists for alleged civil rights violations.

■ It is well established that in interpreting insurance policies the burden of proving that no coverage exists is upon the insurer. *Robbins Auto Parts, Inc. v. Granite State Ins. Co.*, 121 N.H. 760, 762, 435 A.2d 507, 509 (1981); *Olszak v. Peerless Ins. Co.*, 119 N.H. 686, 691, 406 A.2d 711, 715 (1979); RSA 491:22(a) (Supp. 1979). This court has also established certain rules of construction applicable to the interpretation of insurance policies. The general rule is that the court will honor the reasonable expectations of the policyholder. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. at 771, 423 A.2d at 985 (citing *Magulas v. Travelers Ins. Co.*, 114 N.H. 704, 706, 327 A.2d 608, 609 (1974). In the case of ambiguous policy language, a rule of strict construction requires that the policy be construed in favor of the insured and against the insurer. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. at 771, 423 A.2d at 985. This rule of strict construction, however, is a rule of presumption only. We have held recently that "[t]he ambiguity rule which we adopted in *Trombly* will not be applied so as to create coverage where it is clear that none is intended." *Robbins Auto Parts, Inc. v.*

*Granite State Ins. Co.*, 121 N.H. at 764, 435 A.2d at 509. Factors which can be used to rebut the presumption of construction in favor of the insured are the parties' prior dealings with each other, *see Karol v. N.H. Ins. Co.*, 120 N.H. 287, 290, 414 A.2d 939, 941 (1980); *Grimes v. Concord Gen'l Mut. Ins. Co.*, 120 N.H. 718, 722, 422 A.2d 1312, 1315 (1980); *Robbins Auto Parts, Inc. v. Granite State Ins. Co.*, 121 N.H. at 763, 435 A.2d at 509, and the insured's reasonable reliance on his agent's representations. *See Lariviere v. New Hampshire Ins. Group*, 120 N.H. 168, 172, 413 A.2d 309, 312 (1980).

In this case, the insurance company defendants presented sufficient evidence to support the trial court's ruling that they had successfully rebutted the presumption of strict construction that would have favored the insured. *See Trombly v. Blue Cross/Blue Shield*, 120 N.H. at 771, 423 A.2d at 985. The evidence demonstrates that when the town decided to put its insurance out to bid, it intended to purchase essentially the same coverage which it had had with Maine Bonding for several years and that it did not wish to purchase any additional coverages for municipal liability, even though it was aware of the potential for such liability and the availability of insurance to protect against such risks. In addition, during the bidding process, the town selectmen discussed the option of acquiring some kind of liability coverage for public officials but decided not to because they concluded that it was too expensive. Although it is true that the different insurance agents who recommended special endorsements or additional coverages may have used different names to describe those endorsements, possibly causing some confusion in the minds of the selectmen as to exactly what kind of officials' liability would be covered by the recommended endorsements, the record is clear that the selectmen understood that some type of coverage was available for claims of official misconduct but that they decided not to purchase any coverage for such liability. The singular fact that no one on behalf of the town provided notice to its insurers until the spring of 1980 of the Cloutier claims, which were filed in October 1976, indicates that the town did not expect to be covered for such claims. Finally, the fact that, as late as May 1979, some three years after the Cloutier claim was brought, the selectmen inquired about the availability of coverage for civil rights and official liability coverage is evidence of their recognition that they did not already have such coverage.

■ The record thus amply supports the trial court's finding that both parties knew that the town had not purchased protection

against claims for civil rights violations and that no such coverage existed. *See Murphy v. Bateman*, 121 N.H. 748, 750, 433 A.2d 1330, 1332 (1981); *Boyce v. Concord Gen. Mut. Ins. Co.*, 121 N.H. 774, 780, 435 A.2d 510, 514 (1981). Because of the result we have reached on this issue, we need not address the insurance carriers' alternative argument that the insured should be denied coverage because of its failure to give notice of Mr. Cloutier's section 1983 suit in federal court.

*Affirmed.*

All concurred.