492

## Township of Cheltenham v. Tudor Insurance Company

*Marvin L. Wilenzik,* for plaintiff Township of Cheltenham.

*Joshua Wall,* for defendant Tudor Insurance Company.

LAWRENCE, *J.,* February 9, 1990 — This is Hartford Accident and Indemnity Company's appeal from this court's December 4, 1989 affirmance of its order of September 12, 1989 granting partial summary judgment to the Township of Cheltenham as to the issue of Hartford's duty to defend the township in an underlying federal civil rights action.

### FACTS

This case arises out of a petition for declaratory judgment brought by Cheltenham Township and the individual officials of the township against its insurers Tudor Insurance Company and Hartford Accident and Indemnity Company. The township sought to determine whether the insurers were

obligated to defend the township under its contracts of insurance with Tudor and Hartford following the commencement of suit by the underlying plaintiff, Second and Ashbourne, a partnership, which alleged federal civil rights violations charging that the township's delay in approving a land development plan for an apartment complex caused it to suffer damages.

There is no dispute that the policies of insurance issued by Tudor and Hartford to the township were in full force and effect at the time the underlying action was filed. Tudor issued a public official liability policy providing "errors and omissions" coverage on the following basis:

"[I]f, during the policy period, any claim or claims are . . . made against it as a result of any Wrongful Act, the company shall have the right and duty to defend any suit against the insured seeking damages on account of such Wrongful Act, even if any of the allegations of the suit are groundless, false or fraudulent."

The definition of "wrongful act" contained in the policy is as follows:

"(c) 'Wrongful Act' shall mean any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance and nonfeasance by an insured, as public official or employee of the public entity."

At the same time, Hartford has issued a Comprehensive General Liability Insurance Policy containing the following pertinent provision:

"[T]he company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations are groundless, false or fraudulent . . . "

Hartford's Form L-3991, entitled Supplementary Coverage Endorsement — Personal Injury and Additional Insured (Employees) states as follows:

"(1) The insurance afforded under the coverage for bodily injury liability is extended to apply to damages because of personal injury . . .

"(2) When used in reference to this insurance: 'personal injury' means injury sustained by any person or organization and arising out of a personal injury offense committed during the policy period within the policy territory. 'Personal injury offense' means (a) false arrest, detention or imprisonment, or malicious prosecution; (b) libel, slander, defamation, disparagement or violation of an individual's right of privacy; or (c) wrongful entry or eviction or other invasion of the right of private occupancy."

Hartford's general liability policy does not contain any exclusions for civil rights violations.

On July 12, 1989, the township filed a motion for partial summary judgment with respect to the insurer's duty to defend. On September 12, 1989, this court granted plaintiffs' motion as to the duty to defend as to both Tudor and Hartford. Hartford filed a petition for reconsideration. After oral argument on the petition for reconsideration, on December 4, 1989, this court affirmed its earlier order. Hartford filed a timely appeal.

## DISCUSSION

The central issue that confronts this court is whether the policy issued by Hartford, specifically, the supplemental coverage endorsement providing coverage for personal injury offenses arising out of "wrongful entry or eviction or other invasion of the

right of private occupancy" entitles the township to a full defense from Hartford.*

Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage. *Gedeon v. State Farm Mutual Automobile Insurance Company*, 410 Pa. 55, 188 A.2d 320 (1963). The duty to defend remains with the insurer until the insurer can confine the possibility of recovery to claims outside the coverage of the policy. *Cadwallader v. New Amsterdam Casualty Company*, 396 Pa. 582, 152 A.2d 484 (1959); *Seaboard Industries Inc. v. Monaco*, 258 Pa. Super. 170, 392 A.2d 738 (1978). An insurer is obligated to defend the entire claim if some of the allegations in the complaint fall within the terms of the coverage and others do not. *American Contract Bridge League v. Nationwide Mutual Fire Insurance Company*, 752 F.2d 71 (3d Cir. 1985).

Further, in construing an insurance policy, if the words of the policy are clear and unambiguous, the court must give the words their plain and ordinary meaning. Where ambiguous, insurance contracts are to be strictly construed against the insurer. *Pacific Indemnity Company v. Linn*, 766 F.2d 754 (3d Cir. 1985).

Hartford argues that the accepted and plain meaning of "a wrongful entry or eviction or other invasion of the right of private occupancy" is illegal searches and seizures, illegal entries into, or improper evictions of individuals from their private residences and does not include the allegations asserted against

---

* It is not seriously disputed by any of the parties that this provision would provide the only possible basis for coverage under the Hartford policy.

the township in the underlying action. This court does not agree that this provision should be construed so narrowly.

In the absence of any definition of the terms of this provision in the policy, as well as a dearth of Pennsylvania case law interpreting the language, this court relied on *Town of Goshen v. Grant Mutual Insurance Company*, 120 N.H. 915, 424 A.2d 822 (1980), in which the New Hampshire Supreme Court examined the identical provision at issue here to determine if coverage existed based upon similar third-party allegations.

The Town of Goshen sought a declaration as to its comprehensive general liability insurer's duty to defend the town in a developer's suit for wrongful delay of subdivision approval. The court held that the allegations against the town fell within the policy language and entitled the town to a defense.

The court rejected the insurer's theory that tangible interference with the physical property itself was necessary to constitute an "invasion of the right of private occupancy." Rather, the court concluded that the following averments, none of which alleged "physical" interference, were sufficient to bring the complaint within the ambit of policy coverage under this provision:

"[T]he planning board created economic hardships that destroy the viability of the complainant's project, deprived him of his ability to ever recover the money, time and other resources invested in the development of his property, thus causing him substantial damage, and denied plaintiff's right to the free enjoyment of his property without due process of law." *Goshen*, 424 A.2d at 824. The court also noted that since no express civil rights exclusion was written into the policy, any ambiguities should be construed in favor of the insured.

In the case at bar, the allegations of Second and Ashbourne's complaint closely parallel those made against the town in *Goshen, supra.* These allegations include that the township's actions in denying preliminary and final applications for approval were taken in order to frustrate Ashbourne's development of a rental apartment complex upon the project and caused Ashbourne to incur an increased purchase price, additional engineering and land planning expenses, additional interest expense, legal fees, increased taxes and interest income and that the township's actions denied Ashbourne the right to be free from the taking of its property and to the free enjoyment of its property without due process of law.

As in *Goshen, supra,* the language "invasion of the right of private occupancy" in the Hartford policy is ambiguous in the absence of any definition of these terms. Moreover, the Hartford policy had no exclusion for civil rights violations. Accordingly, this court concluded that, given the potential for coverage, Hartford was obligated to defend the township in the underlying action.

Hartford claimed this court erred in not following the reasoning of the New Hampshire Supreme Court in *Town of Epping v. St. Paul Fire and Marine Insurance Company,* 444 A.2d 496 (N.H. 1982), decided subsequent to *Goshen, supra,* and in which no duty to defend was found. Although it involved the same policy language in dispute here and similar underlying allegations, this court felt that Hartford's reliance on *Epping, supra,* was misplaced.

In that case, the court determined that the presumption towards strict construction of policy language in favor of the insured could be rebutted by evidence of the parties' prior dealings and the insured's reasonable expectations as to coverage. The court had evidence before it indicating that the agent

of the general liability insurer had promoted discussions with the town in an attempt to encourage town officials to purchase a public official liability policy which covered civil rights claims and which was available from another insurance company.

After the town selectmen had reviewed their existing coverage and been advised as to the distinct protection the public official coverage afforded the town, they decided not to purchase that coverage. Thus, there was unequivocal evidence that the town selectmen had been made aware through efforts of their own insurance company that the general liability policy did not protect them against civil rights violations. The court held that because both parties knew that the township had not purchased protection against claims for civil rights violations, there was no duty to defend.

The court also observed that the fact that the town failed to provide notice to the general liability insurer of the civil rights complaint until four years after it was filed indicated that the town did not expect to be covered for such claims.

Unlike *Epping, supra,* the testimony of the township manager and the township's insurance broker did not conclusively establish that the township knew that the general liability policy did not cover acts of the public officials. The following exchange took place at the deposition of Nicholas Melair, township manager.

Q: Did you ever have any discussion with your broker as to what was provided by the public official liability coverage and also provided by the CGL [comprehensive general liability] policy?

A: No.

Q: Did you ever have any discussion with anyone

. . . as to whether the Hartford CGL policy covered public official liability prior to the Second and Ashbourne cases?

A: No.

Q: Did you ever have any discussions with any of the carriers from whom you obtained public official liability policy as to what was covered by the policy?

A: No.

In addition, the township's insurance broker, Irwin Shapiro, testified as follows:

Q: Did you ever advise the township that, going back to the time when you originally became its broker, that in your opinion, the Hartford CGL policy did not cover public official's liability, for civil rights violation?

A: We never addressed civil rights.

Q: Did you ever advise the township that public official liability, any public official liability was not covered by the Hartford CGL policy?

A: No, I did not.

A further distinction between this case and *Epping, supra,* is that the township notified Hartford of Second and Ashbourne's complaint only two and one-half months after notifying Tudor, indicating that the township and the broker had not foreclosed the possibility that the Hartford policy applied as well. This was reflected in Mr. Shapiro's testimony.

Q: Have you ever had any discussions with anyone from Hartford . . . as to whether liability of the township or its officials for civil rights claims was covered under its CGL policy?

A: No.

Q: . . . You never had any such discussions?

A: Well, after the case was on record, everybody started looking as to where the civil rights aspect fell, but I've had no specific discussions with underwriters concerning that.

Q: Have you had any discussions, with anybody from Hartford's claims department, whether its CGL covered this type of claim?

A: When we sent it in there was some discussion about it.

*Epping, supra,* does not stand for the proposition that the scope of coverage under a comprehensive general policy is determined by the mere existence of an errors and omissions policy. The purchase of public official liability coverage by the township does not suggest to this court that Hartford's Comprehensive General Liability policy provides no coverage for certain civil rights violations in light of the deposition testimony. Under these circumstances, the undersigned did not err in finding the Hartford was obligated to defend the township.

A secondary issue raised by Hartford was that, even assuming it had a duty to defend, this court should have apportioned the defense costs between Tudor and Hartford. Hartford makes reference to the "other insurance" clause in its general liability policy and to the distinction between Tudor's "specific" policy and Hartford's "general" policy, which Hartford claims requires Tudor to carry the primary burden of the defense costs. The court does not find either of these theories relevant to this case.

The Third Circuit Court of Appeals stated the rule applicable to this case in *Pacific Indemnity Company v. Linn,* 590 F.Supp. 643 (E.D. Pa. 1984), aff'd, 766 F.2d 754 (3d Cir. 1985):

"[B]ecause the duty to defend is independent of liability, each insurer owing Dr. Linn a defense . . . is required to contribute to the cost of defense in equal shares with any other insurer also obligated to defend Dr. Linn . . . " *Id.* at 768.

Here, the situation was unique in that the jury found in favor of the township in the underlying fed-

eral action and, therefore, neither insurance carrier could confine the possibility of recovery to claims patently outside the coverage of its own policy. Thus, regardless of whether Tudor or Hartford would have been ultimately liable for indemnification to the insured, both are liable in equal amounts for the reasonable costs of the township's defense.