TITAN HOLDINGS SYNDICATE, INC.,
et al., Plaintiffs, Appellees,

v.

The CITY OF KEENE, NEW
HAMPSHIRE, Defendant,
Appellant.

No. 89–1381.

United States Court of Appeals,
First Circuit.

Heard Sept. 11, 1989.
Decided March 15, 1990.

Mary Louise Caffrey with whom Ernest L. Bell, III, and Bell, Falk & Norton, P.A., Keene, N.H., were on brief for defendant, appellant.

Sharon A. Spickler with whom Paul R. Cox, Kevin P. Landry and Burns, Bryant, Hinchey, Cox & Schulte, P.A., Dover, N.H., were on brief for plaintiffs, appellees.

Before SELYA, Circuit Judge, COFFIN and FAIRCHILD,* Senior Circuit Judges.

FAIRCHILD, Senior Circuit Judge.

At issue in this action for declaratory judgment is the scope of the "pollution exclusion" clauses in two liability insurance policies. We are asked to decide whether the district court erred by holding that the clauses relieve the policy issuers from defending a complaint brought against the City of Keene, New Hampshire, for damage allegedly caused by the City's operation of a sewage treatment plant.

---

* Of the Seventh Circuit, sitting by designation.

On March 23, 1987, Jack and Mary Meanen brought a two-count lawsuit in a New Hampshire court against the City of Keene, New Hampshire. In it, they alleged that they "have been continuously bombarded by and exposed to noxious, fetid and putrid odors, gases and particulates, to loud and disturbing noises during the night, and to unduly bright night lighting" emanating from the City's sewage treatment plant which abuts their land. Count I, which included claims characterized as pleas of trespass and nuisance, alleges that the operation of the plant has "unreasonably and substantially interfered with [their] quiet enjoyment of the homestead and has substantially deprived [them] of the use of the homestead" and that the Meanens suffered injury through "losing the value and enjoyment of the use of the homestead, suffering physically from nauseousness; and suffering mentally while fearing for their safety and well-being as a result of the noxious fumes and while being exposed to public ridicule and jest." Count II, characterized as a plea of law, incorporates the allegations in Count I, and alleges that the City is liable for the Meanens' bodily injury, personal injury, and property damage pursuant to N.H.Rev.Stat.Ann. 507–B:9 I (1988 Cum.Supp.) (a provision which actually limits the liability of governmental units due to pollutant incidents).

Titan Holdings Syndicate, Inc. (Titan), through Illinois Insurance Exchange, and Great Global Assurance Company (Great Global) each issued to the City liability policies which cover part of the time period during which the Meanens claim damages. After the Meanens filed their suit, Titan and Great Global filed a "petition" in federal district court seeking a declaration that the pollution exclusion clauses of their policies avoided any obligation to defend or indemnify the City with respect to the Meanens' lawsuit. Both parties moved for summary judgment, and the district court in an unpublished order granted summary judgment for the insurance companies, holding that the liabilities claimed in the Meanens' suit against the City were not covered because they fell within the pollution exclusion clauses.

The City appeals, arguing that (1) excessive light and noise are not "pollutants" under the policies, so the policies cover liability for damages from "loud and disturbing noises during the night" and "unduly bright night lighting;" (2) because the exclusion clauses are ambiguous, coverage for the claims is owed for the Meanens' entire claim; and (3) the Meanens' claims are for "personal injury" as defined in the policies and the exclusion clauses do not apply to liability for "personal injury." The City also asks us to award fees and costs.[1]

## I.

The policies issued to the City by the appellees each provide two broad areas of protection—coverage for bodily injury and property damage liability, and coverage for personal injury and advertising injury liability. Each policy also has a pollution exclusion clause excluding, from bodily injury and property damage liability coverage only, damage "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants."[2] The policies define "pollutants" as

(a) At or from premises you own, rent or occupy;

(b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

(d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

---

1. Jurisdiction is based on diversity of citizenship. The parties agree that New Hampshire law controls substantive questions.

2. The pollution exclusion clause in the policy issued by Titan appears both as exclusion (f) on the first printed page of the "Commercial General Liability Policy," and in a separate endorsement. Joint Appendix at 46 & 66. It excludes coverage for

(1) Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Joint Appendix at 46, 66, 107 & 109.

Setting aside for the moment that portion of the Meanens' claim for bodily injury and property damage caused by the "noxious, fetid and putrid odors, gases and particulates," the City argues that the pollution exclusion clauses do not exclude coverage for the Meanens' claim to have suffered from the "loud and disturbing noises during the night," and "unduly bright night lighting," since excessive noise and bright lights are not "pollutants" under the policies.

The district court, in holding that the Meanens' entire claim fell within the exclusions, did not treat the claim based on light and noise separately from the claim concerning the noxious odors, gases and particulates. The court interpreted the clauses as "essentially intended to exclude coverage under the insurance policy for damages and injuries occurring as a result of *pollution related activities* of the insured." (Emphasis added.) Since the source of the Meanens' discomfort was a sewage treatment plant, which certainly is a "site or location used ... for the handling, storage, disposal, processing or treatment of waste," the court held the claims were excluded from coverage.

■ When deciding whether a claim comes within an express exclusion, the question is "whether the ordinary layman in the position of the insured could reasonably be expected to understand that certain exclusions qualified the policy's grant of coverage." *New Hampshire Ins. Co. v.*

*Schofield*, 119 N.H. 692, 694, 406 A.2d 715, 717 (1979) (quoting *Commercial Union Assurance Cos. v. Gollan*, 118 N.H. 744, 745, 394 A.2d 839, 841 (1978)). First of all, the exclusion language does not support the district court's understanding of an exclusion for all "pollution related activities." The clauses expressly exclude only bodily and property damage liability "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." To read the clauses as excluding all claims for damages from all "pollution related activity" stretches the exception beyond its express language, and provides less coverage than agreed to.

It is undisputed that the sewage treatment plant is "a site ... used ... for the handling, storage, disposal, processing or treatment of waste." What is at issue is whether the excessive light and noise are "pollutants" within the meaning of the policy, so that any injury suffered by the Meanens on account of them is excluded from coverage. The appellees say they are. While we agree that excessive light and noise possibly *could be* considered "pollutants," as that term is sometimes used, the relevant definition of the word is explicitly provided by the policies. According to the policies, a pollutant is "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Excessive noise and light may be "irritants," but they are not *solid, liquid, gaseous or thermal* irritants.[3] Nor are they generally thought of as similar to smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste, the illustrative terms used in the policy definition. *Noscitur a sociis.* Since the policies' definition of "pollutants" does

---

(i) if the pollutants are brought on or to the site or location in connection with such operations; or
(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
(2) Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants. Great Global's exclusion clause (appearing in two separate endorsements modifying the stan-

dard printed exclusion clause) is identical in all relevant aspects. Joint Appendix at 107, 109.

**3.** One theory of quantum mechanics posits light as consisting of "massless, energetic and momentum-transporting particles" called photons. 14 McGraw–Hill Encyclopedia of Science & Technology at 562 (6th ed. 1987). Nonetheless, we do not think the reasonable person in the position of the insured would consider light to be a "solid" irritant.

not include excessive noise and light, the policies protect the City from any portion of the Meanens' claim based on liability for bodily injury or property damage due to the noise and light coming from the City's sewage treatment plant.

 The appellees try to characterize the Meanens' complaints of excessive light and noise as "peripheral" to their complaints of noxious emissions, and argue they have no duty to defend or indemnify the City for such claims. Whether or not the complaints about light and noise are peripheral is irrelevant. The insurers have a duty, provided by the terms of the respective policies, to defend any suit seeking damages for liability covered by the policies. Joint Appendix at 46, 47 & 98. "It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy, even though the suit may eventually be found to be without merit." *United States Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 151–52, 461 A.2d 85, 87 (1983) (citing *Hersey v. Maryland Casualty Co.*, 102 N.H. 541, 542–43, 162 A.2d 160, 162 (1960)). If some of the claims against the insured fall within the terms of coverage, and some without, the insured must still defend the entire claim (at least until it is apparent that no recovery under the covered theory can be had) but need only indemnify for liability actually covered. *See, e.g., Western Cas. & Sur. v. Intern. Spas of Ariz.*, 130 Ariz. 76, 79–80, 634 P.2d 3, 6–7 (App.1981); *Rimar v. Continental Cas. Co.*, 50 A.D.2d 169, 376 N.Y.S.2d 309, 312–13 (Ct.App.1975); John Alan Appleman, 7C Insurance Law and Practice, § 4684.01 at 102–07 (Berdal ed. 1979); 41 A.L.R.2d 434 (1980 Supp.).[4] Therefore, the appellees are obligated to defend the entire claim brought by the Meanens, but eventually need only indemnify (under the bodily injury and property damage coverage) for bodily injury and property damage arising from the plant's alleged excessive noise and light.

## II.

 After arguing that light and noise do not come within the policy definition of the term "pollutant," the City claims the entire definition of the term "pollutant" is ambiguous, and should be construed in its favor to provide coverage of liability for *all* damages alleged by the Meanens, not just for damages caused by excessive light and noise. The City asserts that "[t]he wording of the exclusion is so broad and vague that its literal reading could result in unreasonably excluding coverage for every conceivable incident connected with any plant dealing with pollutants." Just because the parties dispute the scope of a policy's coverage does not mean it is ambiguous; the meaning of the language must be unclear, and the parties' dispute based upon reasonable differences about the language's interpretation. *Town of Goshen v. Grange Mutual Ins. Co.*, 120 N.H. 915, 918, 424 A.2d 822, 825 (1980); *Laconia Rod & Gun Club v. Hartford Acc. & Indemn. Co.*, 123 N.H. 179, 182, 459 A.2d 249, 251 (1983).

 The very precision of the City's distinction between noxious fumes and excessive light and noise shows that the policy definition of pollutants is workable, and defeats its claim of ambiguity. Although the terms within the definition of pollutant —"irritant" and "contaminant"—are not defined, the drafter of a policy need not define each word in the policy *ad infinitum*, but may rely on the ordinary meaning of words, *Robbin's Auto Parts, Inc. v. Granite State Ins. Co.*, 121 N.H. 760, 764, 435 A.2d 507, 509 (1981), and on the use of illustrative examples. In any case, the City fails to explain how any imprecision remaining in the meanings of "irritant" or "contaminant" affects this case, since there

---

4. Although we found no New Hampshire Supreme Court case which specifically adopts what the Arizona court in *Western Cas. & Sur.* called the "apparent majority rule," we think New Hampshire case law is consistent with this principle and that the New Hampshire courts would apply it if faced with a similar case.

is no real dispute over whether the emissions of the sewage treatment plant are irritants or contaminants, just whether they are the kind of irritant or contaminant excluded from coverage.

■ The City also seems to claim that since it was reasonable for the City to expect coverage for claims such as the Meanens', the claims are in fact covered. An insured's expectations of coverage play two roles in New Hampshire law. When policy language is ambiguous, the language subject to different interpretations is construed in favor of the insured, and the insured's reasonable expectations of coverage are considered. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771–72, 423 A.2d 980, 985 (1980). In the absence of truly ambiguous policy language, though, consideration of an insured's expectations about coverage is limited to cases where "a policy is so constructed that a reasonable man in the position of the insured would not attempt to read it." *Storms v. U.S. Fidelity & Guar. Co.*, 118 N.H. 427, 429–30, 388 A.2d 578, 580 (1978). This rule originated in reaction to unnecessarily complex and confusing insurance policies which hid important qualifications or limitations under an avalanche of verbiage. *See De Lancey v. Insurance Co.*, 52 N.H. 581, 787–88 (1873); *Storms*, 118 N.H. at 429–30, 388 A.2d at 580. If so, coverage

> will not be delimited by the policy language, regardless of the clarity of one particular phrase among the Augean stable of print. When such a policy is involved, the insured may rely on the representations of the agent or even solely on his own understanding of the insurance he is purchasing, as long as that reliance is reasonable. Considered would

be such matters as the insured's purpose for procuring the policy and any discussions that the insured had with the agent on the meaning of the policy.

*Storms*, 118 N.H. at 429–30, 388 A.2d at 580. The City makes no claim that the two policies issued by the appellants are unreadable, or that the pollution exclusion clauses were surprises buried in Augean stables. The policies are fairly long and involved, but the exclusion clauses are clearly set out on separate pages, not hidden in fine print. *See* Joint Appendix at 66 & 107. We cannot say that a person in the position of a city purchasing general liability insurance could have reasonable expectations of coverage beyond the express terms of the policies.

### III.

The pollution exclusion clauses only apply to liability for "bodily injury and property damage"; they do not apply to coverage for "personal injury or advertising injury" liability. The City argues that the Meanens' entire claim is covered under the policies' separate personal injury coverage.

Both policies covered liability for damages because of "personal injury to which this insurance applies."[5] In the world of liability insurance policies, coverage for "personal injury" liability depends not primarily on the type of *injury* sustained, but whether the injuries arose from the commission of certain *offenses*. *See* Appleman, 7 Insurance Law, § 4501.14. Titan's policy defines "personal injury" as follows:

> "Personal injury" means injury, other than bodily injury, arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;

---

**5.** Titan's policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies.... We will have the right and duty to defend any suit seeking those damages.

Joint Appendix at 47. Great Global's policy provides:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent....

Joint Appendix at 98.

b. Malicious prosecution;

c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

Joint Appendix at 51. Great Global's definition is quite similar:

"Personal Injury" means injury arising out of one or more of the following offenses committed during the policy period:

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) wrongful entry or eviction or other invasion of the right of private occupancy;

(3) a publication or utterance

(a) of a libel or slander or other defamatory or disparaging material, or

(b) in violation of an individual's right of privacy.

Joint Appendix at 98. Because the policies only cover injuries arising out of certain enumerated offenses, we are not concerned with the type of injury alleged, but rather whether the injury arose from one of the listed offenses.[6]

■ In deciding the scope of a liability policy's coverage, a court must compare the policy language with the *facts* pled in

the underlying suit to see if the claim falls within the express terms of the policy; the legal nomenclature the plaintiff uses to frame the suit is relatively unimportant. *See, e.g., Johnson Shoes*, 123 N.H. at 151–52, 461 A.2d at 87. The burden of proof is on the insurer to show the lack of coverage. N.H.Rev.Stat.Ann. 491:22–a. The basic gist of the Meanens' lawsuit is that the City of Keene is running a sewage treatment plant which gives off noxious fumes, and produces excessive light and noise. They claim this has injured them in various ways: causing mental distress and worries about health effects, making them nauseous, subjecting them to public ridicule, and interfering with the quiet enjoyment and use of their home. Except for one possibility, we agree with the appellees the Meanens' have not brought a suit for which the personal injury coverage provides protection.

■ The City does not argue that the Meanens' suit alleges injury due to false arrest, detention, imprisonment, or malicious prosecution. Nor do we accept the City's argument that because the Meanens claim to have suffered public ridicule on account of the sewage plant, their complaint falls within the policies' personal injury coverage. To come within the personal injury coverage, a suit must be based upon allegations of an offense for which the City might become liable. The Meanens' writ contains no allegations that the City defamed them or which could otherwise support the City's liability for dam-

---

**6.** We note that the two policies also contain endorsements modifying the printed definitions of "personal injury." Titan's policy provides

The following is added to paragraph 10 ["Personal injury"] of the DEFINITIONS SECTION:

f. Mental injury, anguish or shock;

g. Discrimination;

h. Humiliation;

i. Assault and battery resulting from the use of reasonable force to protect persons or property.

Joint Appendix at 55. Great Global's policy has a similar endorsement, which reads:

It is agreed that:

(1) the definition of "personal injury" is amended to include:

(a) mental injury, anguish or shock;

(b) discrimination;

(c) humiliation;

(d) assault and battery not committed by or with the knowledge or consent of the insured unless such injury arises solely from the use of reasonable force for the purpose of protecting persons or property.

Joint Appendix at 91. These endorsements, by adding "mental injury, anguish or shock" and "humiliation" to the definition of "personal injury" seem to expand the scope of coverage for personal injury to include claims against the insured based upon the *type* of injury suffered, rather than just claims for injuries arising from specifically enumerated *offenses*. However, because the City has yet to even mention these endorsements, let alone base an argument on them, we do not address any possible applicability to the Meanens' claims.

ages based on "ridicule and jest." The allegations of public ridicule merely elaborate on the claim of mental suffering.

██ The City also attempts to portray the Meanens' writ as alleging that the plant's fumes, noise and light constitute a wrongful entry of, or eviction from, their property. While we have been unable to find any New Hampshire cases defining a tort of wrongful entry, we think it most closely resembles that of trespass. (Indeed, the Meanens labelled Count I of their writ as sounding in "trespass and nuisance.") The New Hampshire Supreme Court, in a case where the plaintiff was suing for damages caused by water released from an allegedly negligently maintained dam, held that such claims require an intentional, not just negligent, invasion of the plaintiff's property. *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 54, 289 A.2d 68, 72 (1972). *See* also Restatement (Second) of Torts § 158 (1965). The court refused to recognize that the defendant's alleged negligence could constitute the "constructive intent" necessary to support a trespass action. *Id.* The Meanens' writ does allege that the City is intentionally operating a sewage treatment plant, but does not allege that the discharges from the plant constitute an intentional invasion of the Meanens' property. The allegation which comes closest is that the City, "by operating the plant, has continued, negligently, if not intentionally, to expose Plaintiffs and the homestead to the odors, gases, particulates, noise, and light." We do not deem this an allegation of intentional invasion meeting the requirement of *Moulton*.[7] Nor do we think the Meanens' action is properly considered one for wrongful eviction, since there is no allegation of a tenant-landlord relationship between the Meanens and the City. *See, e.g.,* 52 C.J.S. Landlord & Tenant §§ 455 & 460(1).

██ One difference between the two policies' personal injury liability coverages is significant in this case, and merits separate treatment. Great Global's policy, unlike Titan's, includes coverage in its personal injury section for liability arising out of "wrongful entry or eviction *or other invasion of the right of private occupancy*." According to the New Hampshire Supreme Court, an invasion of the right of private occupancy need not involve "an appreciable and tangible interference with the physical property itself." *Town of Goshen*, 120 N.H. at 917, 424 A.2d at 824. In *Town of Goshen*, a § 1983 claim alleging that the Town and its officials had wrongfully refused to grant a property owner permission to develop a subdivision, causing him economic hardships and monetary losses, and denying him the right to the free enjoyment of his property, was held to constitute an allegation of an invasion of the right of private occupancy. The court held that the scope of coverage provided by the clause was unclear, and so read the policy to provide coverage for the insured. *Id.* at 917–18, 424 A.2d at 824–25. Two years after *Town of Goshen*, the New Hampshire Supreme Court held that a policy containing the same clause did not cover an underlying suit raising claims like those in *Town of Goshen*. *Town of Epping v. St. Paul Fire & Marine Ins.*, 122 N.H. 248, 444 A.2d 496 (1982). In *Town of Epping*, the Supreme Court agreed that the clause "other invasions of the right of private occupancy" lacks precise definition. Explaining that the rule requiring ambiguous clauses to be construed in favor of the insured is only a presumption which can be defeated by evidence that the parties did not intend to provide for coverage for certain claims, it considered extraneous evidence of the parties' intentions regarding coverage. *Id.* at 252–53, 444 A.2d at 499. The record showed that when shopping for liability insurance, the Town had decided to purchase a policy providing coverage essentially identical to its prior one, consciously forgoing the option of buying additional coverage expressly providing protection for suits alleging official misconduct. Because the record supported the trial court's conclusion "that both parties knew that the

---

7. We also question whether the alleged spreading of fumes, noise and light falls within the ordinary meaning of wrongful entry of proper-ty. We need not, however, decide that issue, since the writ otherwise fails to meet the requirements of a claim for wrongful entry.

town had not purchased protection" which would cover the underlying claim, no coverage existed. *Id.*

▋ The underlying claim in this case contains allegations that the City's sewage treatment plant's noxious odors, noise and light have "unreasonably and substantially interfered with [the Meanens'] quiet enjoyment of the homestead and have substantially deprived [them] of the use of the homestead." *Town of Goshen* does not require an allegation of *physical* invasion before a claim comes within coverage for liability arising from "other invasion of the right of private occupancy." Therefore, construing the clause in favor of the insured, it is reasonable and consonant with the ordinary meaning of the clause to hold that the Meanens' suit alleges just such an invasion, and so is covered by Great Global's policy. As already noted, *Town of Epping* permits the use of extraneous evidence to show the parties' agreement on a different meaning. It is true that Great Global made no showing on its motion for summary judgment of the existence of such evidence. Perhaps the matter might be left there. *Town of Epping*, however, seems to have escaped everyone's attention, and it seems fair to permit Great Global, on remand, to produce the type of evidence relied on in *Town of Epping*, if it exists.

## IV.

▋ Finally, the City asks us to award reasonable attorney's fees and costs for defending this suit. The availability of attorney's fees in diversity cases depends upon state law, *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975), and this holds true in declaratory judgment actions. *See, e.g., Mercantile Nat. Bank at Dallas v. Bradford Tr. Co.*, 850 F.2d 215, 218 (5th Cir.1988); *Iowa Mut. Ins. Co. v. Davis*, 689 F.Supp. 1028, 1031–32 (D.Mont.1988); *Western World Ins. Co. v. Hartford Mut. Ins. Co.*, 602 F.Supp. 36, 37 (D.Md.1985), *aff'd in part, rev'd in part*, 784 F.2d 558 (4th Cir.1986). *Cf. Volpe v. Prudential Property and Cas. Ins. Co.*, 802 F.2d 1, 4–5 (1st Cir.1986) (denying fees under Federal Declaratory Judgment Act when state declaratory action, which allows for award of fees, was unavailable).

▋ New Hampshire law provides for a declaratory judgment remedy. N.H.Rev. Stat.Ann. 491:22. "In any action to determine coverage of an insurance policy pursuant to RSA 491:22," the insured is entitled to attorney's fees and costs, if the insured prevails. N.H.Rev.Stat.Ann. 491:22–b. Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), state remedies are available in federal diversity actions.[8] The com-

8. This is true despite the somewhat broad statement in *Volpe*, 802 F.2d at 5, that "the State declaratory judgment remedy, with its accompanying attorneys' fees, is not available to litigants proceeding in federal court," citing *Jackson v. Federal Ins. Co.*, 127 N.H. 230, 233, 498 A.2d 757, 759 (1985). *Jackson* was a declaratory judgment action brought in state court to determine whether a liability insurance policy obligated the insurer to defend a suit filed against its insured. The underlying suit against the insured was brought in federal court. The New Hampshire declaratory judgment statute provides a six-month limitation period "after the filing of *the writ* which gives rise to the question" when a declaratory judgment is sought determining coverage of an insurance policy. N.H.Rev.Stat.Ann. 491:22 (emphasis added). Reading the statute quite literally, the state supreme court held that because federal actions are begun by "complaint" rather than by "writ," the legislature must have intended only to pro-

vide declaratory judgments to determine an insurer's duty to defend state court suits, but not federal ones. *Jackson*, 127 N.H. at 233, 498 A.2d at 759–60. The state supreme court held that since the underlying action was filed in federal court, the state trial court was correct to dismiss the declaratory judgment action. *Id.* In *Volpe*, as in *Jackson*, the state remedy was deemed unavailable since the underlying action had been brought in federal court. See 802 F.2d at 1. In this case, though, the underlying action *was* brought by writ in state court, so the state remedy was available.

We note that in 1987, shortly before the commencement of the present action, the New Hampshire legislature amended Chapter 491 by adding 491:22–c, which provides that

The remedy of declaratory judgment to determine the coverage of a liability insurance policy under RSA 491:22, 22–a, and 22–b shall also be available in the United States district court for the district of New Hampshire when

plaint which began this action, however, stated that it was brought under the *Federal* Declaratory Judgment Act, which does not explicitly provide for attorney's fees awards. 28 U.S.C. § 2201. *See Volpe*, 802 F.2d at 5. The appellees cannot avoid liability for attorney's fees simply by choosing to base their complaint on the federal act, though. The availability of attorney's fees still turns on state law, and state law now shows a clear intention to make attorney's fees available for actions brought to determine liability coverage in federal court. N.H.Rev.Stat.Ann. 491:22 (see footnote 8 for text).

## V.

### CONCLUSION

The Meanens' claims of liability for bodily injury or property damage arising from loud and disturbing noises during the night and from unduly bright night lighting are not excluded from the coverage afforded by either policy. The Meanens' claims of liability for interference with quiet enjoyment and use of their home arising from any means alleged, including pollutants, fall within the Personal Injury coverage afforded by the Great Global policy and are not excluded by the pollution exclusion clause (unless a showing sufficient to trigger *Town of Epping* can be made). Accordingly, the City is entitled to a declaratory judgment that appellees are bound to defend the City from the Meanens' suit and to indemnify to the extent any recovery is based on the claims covered by the policies. We therefore reverse the judgment appealed from and remand for entry of a declaratory judgment and further proceedings consistent with this opinion. The City is entitled on remand to an award of reasonable attorney's fees for the defense of this suit in the district court and the prosecution of its appeal before us.

We take no view as to the effect, if any, upon the amount of attorney's fees allowable under New Hampshire's Chapter

that court may properly adjudicate the matter under the laws of the United States.

Whatever the full effect of this amendment, it at least makes certain that the statement above

491:22, of the fact that the prevailing insured did not win on every claim it asserted. *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 434–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (considering the issue in regard to 42 U.S.C. § 1988).

*Reversed and Remanded.*

quoted from *Volpe* does not apply when, as in this case, the underlying action is in state court.