USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1608 DRYDEN OIL COMPANY OF NEW ENGLAND, INC., DRYDEN OIL COMPANY,  INC., and DRYDEN OIL COMPANY OF PENNSYLVANIA, INC., Plaintiffs, Appellants, v. THE TRAVELERS INDEMNITY COMPANY,  THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS, and  AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Defendants, Appellees.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________  ____________________ Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________  ____________________ Darragh K. Kasakoff, with whom Seder & Chandler was on brief for ___________________ _________________ appellants. John A. Nadas, with whom Bret A. Fausett, Elizabeth M. McCarron _____________ _______________ _____________________ and Choate, Hall & Stewart were on brief for appellees Travelers _______________________ Indemnity Company and Travelers Indemnity Company of Illinois. Karl S. Vasiloff, with whom Catherine M. Colinvaux and Zelle & _________________ ______________________ _______ Larson were on brief for appellee American Manufacturers Mutual ______ Insurance Company.  ____________________ August 5, 1996  ____________________  CYR, Circuit Judge. Plaintiffs-appellants Dryden Oil CYR, Circuit Judge ______________ Company of New England, Dryden Oil Company, and Dryden Oil Company of Pennsylvania (collectively: "Dryden") challenge a district court ruling rejecting their claim that defendants- appellees, The Travelers Indemnity Company, The Travelers Indem- nity Company of Illinois (collectively: "Travelers") and Ameri- can Manufacturers Mutual Insurance Company ("American Mutual"), are obligated to defend and indemnify Dryden in connection with a lawsuit brought against Dryden by Raymond King, trustee of the 150 Worcester Center Boulevard Trust ("Worcester Trust"), Dryden's former landlord. We affirm in part, and reverse and remand in part.  I I BACKGROUND BACKGROUND __________ A. The Historical Facts A. The Historical Facts ____________________ For the period July 30, 1986, to July 30, 1987, defen- dant-appellee Travelers issued Dryden (i) a primary comprehensive general liability insurance policy ("primary liability policy"), which included "property damage" and "personal injury" coverage, and (ii) a catastrophic umbrella liability policy ("umbrella policy"). For the period December 31, 1986, to December 31, 1987, Travelers issued Dryden a property and inland marine  insurance policy ("property insurance policy") as well, affording coverage "against all risks of direct physical loss or damage." Travelers provided Dryden with similar primary and umbrella liability coverage to July 30, 1988. Defendant-appellee American 2 Mutual provided primary comprehensive liability coverage to Dryden from July 31, 1988, to December 1, 1989.  On December 29, 1986, Dryden had leased 150 Worcester Center Boulevard (the "Property") from White & Bagley Company ("White & Bagley"). Thereafter, Dryden used the Property for mixing and manufacturing industrial lubricants and oils, as White & Bagley had done for many years. On December 30, 1986, Dryden listed the Property both in its primary and its umbrella liabili- ty policies with Travelers. Later, Dryden listed the Property in its property insurance policy with Travelers and its comprehen- sive liability policies with American Mutual as well.1  On December 31, 1986, White & Bagley conveyed the Property to the White & Bagley Liquidation Trust. On August 28, 1987, the White & Bagley Liquidation Trust sold the Property to Worcester Trust, together with an assignment of the Dryden lease. The latter transfer occurred after Worcester Trust had learned the results of an environmental assessment of the Property conducted pursuant to Mass. Gen. L. ch. 21E ("Massachusetts Oil and Hazardous Material Release Prevention and Response Act"), which indicated "limited contamination" requiring "minimal remediation." Dryden continued to lease the Property until December 31, 1988. B. The Litigation B. The Litigation ______________  ____________________ 1As Dryden does not contend that the liability coverages afforded under the American Mutual and Travelers policies differ in any respect material to the claims presented on appeal, we need not discuss either the Travelers umbrella or the American Mutual primary liability policies.  3 In August 1990, Worcester Trust brought suit in Massachusetts Superior Court against, inter alios, White & _____ _____ Bagley, the White & Bagley Liquidation Trust, Dryden and Prescott Bagley, President of Dryden Oil of New England (collectively: "Owners/ Operators"), alleging, among other things, that there had been "spills or releases of oil, industrial lubricants and/or hazardous material during the transfer, storing, mixing and manufacturing process" throughout the time White & Bagley owned the Property, which continued while Dryden occupied the Property under its lease with White & Bagley and resulted in severe contamination from "oil and/or hazardous material."  After the pleadings were closed, three counts remained against, inter alios, the Owners/Operators, including Dryden. _____ _____ Counts I and II charged Dryden with liability for past and future response costs imposed upon Worcester Trust, pursuant to Mass. Gen. L. ch. 21E, for damage to real and personal property, and for related attorney fees, incurred in connection with alleged "releases" at the Property. Count III charged Dryden with liability for damages sustained by Worcester Trust due to the "improper, unsafe and otherwise negligent manner" in which Dryden, inter alios, "stored oil, industrial lubricants and/or _____ _____ hazardous materials." Five additional counts, directed against Dryden alone, demanded damages for past and future losses caused Worcester Trust due to Dryden's breaches of its lease,2 various  ____________________ 2The lease obligated Dryden to: (1) pay for all supplies, materials and labor associated with cleaning and maintaining the Property; (2) reimburse the lessor for repairs and replacements 4 forms of "waste" committed on the Property,3 conversion of personal property, and engaging in unfair and deceptive acts or practices in its leasehold relationship with Worcester Trust in violation of Mass. Gen. L. ch. 93A, 2 and 11.  In due course, after Travelers and American Mutual declined to defend or indemnify, Dryden brought a state court action for declaratory relief, breach of contract, and for alleged violations of Mass. Gen. L. ch. 93A & ch. 176D. Once Travelers and American Mutual removed the action to federal district court pursuant to 28 U.S.C. 1332, 1441, Dryden sought  ____________________ necessitated by Dryden's negligent or willful acts; (3) surrender the Property in rentable condition; and (4) pay all attorney fees and expenses incurred by the lessor in the event of a breach or default by Dryden under the lease. The lease allowed Dryden, with the lessor's approval, to alter the Property in conformity with all applicable federal, state and local laws, statutes, ordinances and regulations.  3For example, Count VI alleged as follows:  a. Lessee failed to maintain and re- pair the property in satisfactory manner; b. Lessee physically damaged the Prop- erty; c. Lessee failed to remove trash which it left strewn throughout the Property; d. Lessee made alterations, additions, improvements or changes to the Property with- out the consent of the lessor and in viola- tion of applicable laws, statutes, ordinanc- es, rules, orders, regulations and require- ments of federal, state and local government; e. Lessee willfully and indiscrimi- nately removed property and fixtures from the premises causing damage to the realty; f. Lessee abandoned personal property, trade fixtures and equipment, making the premises unrentable; and  g. . . . lessee caused the release of oil and/or hazardous material.  5 summary judgment on its claim for declaratory relief relating to the alleged duty to defend. The defendant insurers responded with cross-motions for summary judgment on all three counts. The district court ultimately adopted the report of a magistrate judge and entered summary judgment for Travelers and American Mutual on all counts. Dryden appealed.  II II DISCUSSION4 DISCUSSION __________ Under Massachusetts law, a liability insurance carrier must defend an action against its insured if the allegations "are ___________ `reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms . . . ." GRE Ins. ________ Group v. Metropolitan Boston Hous. Partnership, Inc., 61 F.3d 79, _____ ___________________________________________ 81 (1st Cir. 1995) (quoting Liberty Mut. Ins. Co. v. SCA Servs. ______________________ __________ Inc., 588 N.E.2d 1346, 1347 (Mass. 1992)). The "complaint need ____ only show, through general allegations, a possibility that the liability claim falls within the insurance coverage." SCA ___ Servs., Inc. v. Transportation Ins. Co., 646 N.E.2d 394, 397 ____________ _________________________ (Mass. 1995). The duty to indemnify is defined less generously, see Travelers Ins. Co. v. Waltham Indus. Labs. Corp., 883 F.2d ___ ___________________ __________________________ 1092, 1099 (1st Cir. 1989) (citing Sterilite Corp. v. Continental _______________ ___________ Cas. Co., 458 N.E.2d 338, 341 n.4 (Mass. App. Ct. 1983), rev. ________ ____  ____________________ 4We review summary judgments de novo, to determine whether __ ____ there is a trialworthy dispute as to any material fact under the applicable law. Commercial Union Ins. v. Walbrook Ins. Co., 7 ______________________ __________________ F.3d 1047, 1048 n.1, 1050 (1st Cir. 1993). As all claims pose pure questions of Massachusetts law relating to insurance con- tract interpretation, our review is plenary throughout. Id. at __ 1048 n.1. 6 denied, 459 N.E.2d 826 (Mass. 1984)), as it depends on the ______ evidence, rather than an expansive view of the complaint, id. ________ __ (citing Newell-Blais Post #443 v. Shelby Mut. Ins. Co., 487 _______________________ ______________________ N.E.2d 1371, 1374 (Mass. 1986)).  We interpret the relevant policy language with a view to whether "`an objectively reasonable insured . . . would expect to be covered.'" GRE Ins. Group, 61 F.3d at 81 (quoting Trustees ______________ ________ of Tufts Univ. v. Commercial Union Ins. Co., 616 N.E.2d 68, 72 _______________ _________________________ (Mass. 1993)). Unambiguous terms are given their plain meaning, High Voltage Eng'g Corp. v. Federal Ins. Co., 981 F.2d 596, 600 _________________________ ________________ (1st Cir. 1992) (citing Stankus v. New York Life Ins. Co., 44 _______ ________________________ N.E.2d 687, 689 (Mass. 1942)), and ambiguous terms are construed against the insurer. Id. (citing August A. Busch & Co. of Mass. ___ _______________________________ v. Liberty Mut. Ins. Co., 158 N.E.2d 351, 353 (Mass. 1959)). ______________________ Once an insured establishes that a claim comes within the terms of coverage, the insurer must demonstrate "the applicability of any exclusion." GRE Ins. Group, 61 F.3d at 81 (citing Camp _______________ ____ Dresser & McKee, Inc. v. Home Ins. Co., 568 N.E.2d, 631, 633 ______________________ ______________ (Mass. App. Ct. 1991)). A. Property Damage Liability Coverage A. Property Damage Liability Coverage __________________________________ The Travelers primary liability policies included, inter alia, a comprehensive general liability ("CGL") Form and a _____ ____ Broad Form CGL Endorsement. The CGL Form obligated Travelers to pay "all sums [for] which the [i]nsured shall become legally obligated . . . because of . . . property damage to which [the policy] applies, caused by an occurrence . . . ." The CGL Form 7 likewise imposed "[a] duty to defend any suit against the [i]n- sured seeking damages on account of . . . property damage . . . ."5  Among the relevant property damage exclusions in the __________ CGL Form are (i) a "Contractual Liability Exclusion" for "liabil- ity assumed by the [i]nsured under any contract or agreement except an incidental contract" (emphasis added), which includes ______ __ __________ ________ _____ ________ any written lease of premises, and (ii) exclusion (f) relating to ___ _______ _____ __ ________ the "emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant . . . ." In the primary liability policies, exclusion (f) is replaced by an "Absolute Pollution Exclusion" for "property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants . . . at or from premises the named [i]nsured owns, rents or occupies . . . ." Under the Absolute Pollution Exclusion, "[p]ollutants means any solid, liq- uid, gaseous or thermal irritant or contaminant, including smoke,  ____________________ 5"Property damage" is (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or  (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.  "Occurrence" is "an accident, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the insured."  8 vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."  The CGL Form also contains an exclusion (k), the Owned or Leased Premises Exclusion, which bars coverage for damage to:  __ "(1) property owned or occupied by or rented to the [i]nsured, (2) property used by the [i]nsured, or (3) property in the care, cus- tody or control of the [i]nsured or as to which the [i]nsured is for any purpose exer- cising physical control . . . ."  The Broad Form CGL Endorsement in the primary liability policies affords further Contractual Liability Coverage by extending the definition of "incidental contract" to include "any oral or written contract or agreement relating to the conduct of the named insured's business." This contractual liability coverage is exempted from various property damage exclusions in the CGL Form, but the list of exemptions does not mention exclu- sion (f), its replacement the Absolute Pollution Exclusion, or exclusion (k) (Owned or Leased Premises Exclusion). In sum, the Contractual Liability Coverage provided under the Broad Form CGL Endorsement is subject to both the Absolute Pollution Exclusion and Owned or Leased Premises Exclusion (k). 1. The Absolute Pollution Exclusion  1. The Absolute Pollution Exclusion  ________________________________ We think the district court correctly determined that the claims alleged in the Worcester Trust complaint ("property damage caused by `spills or releases of oil, industrial lubri- cants and/or hazardous material'") came squarely within the Absolute Pollution Exclusion. Dryden Oil Co. of New England v. ______________________________ The Travelers Indem. Co., No. 92-40135, slip op. at 10 (D. Mass. ________________________ 9 Nov. 18, 1994) (Report and Recommendation) (citing Essex Ins. Co. ______________ v. Tri-Town Corp., 863 F. Supp. 38 (D. Mass. 1994) (under Massa- ______________ chusetts law, Absolute Pollution Exclusion excepts coverage for physical injury from carbon monoxide releases)). A fair reading of the Absolute Pollution Exclusion clause bars coverage for "'any form of pollution.'" United States Liab. Ins. Co. v. ______________________________ Bourbeau, 49 F.3d 786, 788 (1st Cir. 1995) (under Massachusetts ________ law, lead paint chips deposited on land in the course of strip- ping and painting building constitute a "pollutant").  Dryden nonetheless contends that it cannot now be known whether the damage allegedly sustained by the Property resulted from a "pollutant." It relies on inapposite authority, see Westchester Fire Ins. Co. v. City of Pittsburg, Kan., 791 F. ___________________________ ________________________ Supp. 836 (D. Kan. 1992), for its claim that diesel fuel is not a "pollutant." There, a sprayed mixture of diesel fuel and the insecticide malathion was held not to be a "pollutant" within the meaning of an exclusion clause which defined "pollutants" in a manner similar to the present exclusion clause. As is readily apparent from an earlier and related case cited by Dryden, however, see Westchester Fire Ins. Co. v. City of Pittsburg, ___________________________ ___________________ Kan., 768 F. Supp. 1463 (D. Kan. 1991), aff'd sub nom., Pennsyl- ____ ______________ ________ vania Nat'l Mut. Cas. Ins. Co. v. City of Pittsburg, Kan., 987 ________________________________ ________________________ F.2d 1516 (10th Cir. 1993), and from an earlier and related case not cited by Dryden, see Westchester Fire Ins. Co. v. City of __________________________ _______ Pittsburg, Kan., 794 F. Supp. 353 (D. Kan. 1992), aff'd sub nom., _______________ ______________ Pennsylvania Nat'l Mut. Cas. Ins. Co. v. City of Pittsburg, Kan., _____________________________________ _______________________ 10 987 F.2d 1516 (10th Cir. 1993), the issue in the City of ________ Pittsburg, Kan. trilogy was whether malathion mixed with diesel _______________ fuel not diesel fuel alone is a pollutant. City of _______ Pittsburg, Kan., 987 F.2d at 1517. Moreover, the Tenth Circuit _______________ affirmed the district court on the basis that the "spraying" had been "sudden and accidental" thereby removing it from the explicit language of the exclusion clause not on the basis that the City was spraying a pollutant. Id. at 1519-20.  __ Finally, the Massachusetts Supreme Judicial Court, to which we look in this matter, see Commercial Union Ins., 7 F.3d ___ ______________________ at 1048, n.1, recently assumed that a home heating oil spill "was comprehended by an exclusion for `loss . . . caused by . . . release, discharge or dispersal of contaminants.'" Hanover New ___________ England Ins. Co. v. Smith, 621 N.E.2d 382, 383 n.2 (Mass. App. ________________ _____ Ct. 1993) (quoting Jussim v. Massachusetts Bay Ins. Co., 610 ______ ____________________________ N.E.2d 954, 955 (Mass. 1993)). Whether or not oil or industrial chemicals necessarily constitute pollutants in all forms and circumstances, however, given the policy definition of "pollut- ants" and our reasoning in Bourbeau, supra, we think the absolute ________ _____ pollution exclusion language in these policies would not have permitted an objectively reasonable policyholder to expect liability coverage for contamination resulting from "spills or releases of oil, industrial lubricants and/or hazardous material during the transfer, storing, mixing and manufacturing process" as alleged in the Worcester Trust complaint against Dryden. At the very least, an objectively reasonable policyholder would 11 regard spills or releases of oil, industrial lubricants or hazardous material as "materials to be disposed of or waste." Bourbeau, 49 F.3d at 788 (internal quotation marks omitted). ________ Thus, we think an objective policyholder reasonably could not have believed that "`smoke, vapor, soot, [and] fumes' would be considered pollutants," id. at 788-89 (alteration in original), ___ whereas oil, lubricants and hazardous waste "[were] not." Id. at ___ 789.6  2. Owned or Leased Premises Exclusion (k) 2. Owned or Leased Premises Exclusion (k) ______________________________________ Dryden challenges the district court ruling that the plain meaning of Owned or Leased Premises Exclusion (k) barred liability coverage for the Worcester Trust breach-of-contract claims for damages to the Property while Dryden leased and/or controlled the Property. Dryden argues that the nonpollution- related claims alleged in counts VI, VII and VIII are neither comprehended within the Absolute Pollution Exclusion nor Owned or Leased Premises Exclusion (k), because "[a]t the time the [Worcester Trust] claims were filed with [the Massachusetts Superior Court] Dryden [no longer] own[ed], occupi[ed], rent[ed]  ____________________ 6Our view comports with the position taken in Titan Holdings ______________ Syndicate, Inc. v. City of Keene, N.H., 898 F.2d 265 (1st Cir. _______________ ___________________ 1990), where we determined under New Hampshire law that excessive noise and light from a city sewage treatment plant were not "pollutants" within the meaning of an absolute pollution exclu- sion barring coverage for "irritants" and "contaminants." We noted that though excessive noise and light "may be `irritants,' . . . they are not solid, liquid, gaseous or thermal irritants. _____ ______ _______ __ _______ Nor are they generally thought of as similar to smoke, vapor, soot, fumes, acids, alkalis, chemicals, or waste, the illustra- tive terms used in the policy definition. Noscitur a sociis." ________ _ ______ Id. at 268 (footnote omitted).  ___ 12 or control[led] the property."  Assuming these claims are not within the Absolute Pollution Exclusion, we are nonetheless persuaded that liability coverage was barred by Owned or Leased Premises Exclusion (k). Although exclusions must be strictly construed, Waltham Indus. ______________ Labs. Corp., 883 F.2d at 1097 (citing Quincy Mut. Fire Ins. Co. ___________ __________________________ v. Abernathy, 469 N.E.2d 797, 799 (Mass. 1984)), these primary _________ liability policies explicitly restricted coverage to property damage occurrences "during the policy period." Consequently, no reasonably objective policyholder could have believed that Owned or Leased Premises Exclusion (k), which barred coverage for "damage to . . . property rented to the Insured," somehow con- ______ _______ verted the policies into "claims-made" policies to which Owned or Leased Premises Exclusion (k) no longer applied because the lease _________ had lapsed.  A primary function served by Owned or Leased Premises Exclusion (k) "is to prevent the insured from using a liability insurance policy as if it provided property insurance." Kenneth S. Abraham, Environmental Liability Insurance Law 163 (1991). It _____________________________________ likewise insulates against "the `moral hazard' problem where an insured has less incentive to take precaution owing to the existence of insurance." Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes 10.03[b], at 441 (8th ________________________________________ ed. 1995) (quoting United States v. Conservation Chem. Co., 653 ______________ _______________________ F. Supp. 152, 199 (W.D. Mo. 1986) (internal quotation marks omitted)). These recognized aims would be subverted by Dryden's 13 overly inventive reading of Owned or Leased Premises Exclusion (k). 3. Contractual Liability Coverage 3. Contractual Liability Coverage ______________________________ Next, Dryden advances two grounds for its contention that the nonpollution-related contract claims alleged by Worces- ter Trust are comprehended by the "property damage" liability coverage. First, coverage is provided for an "incidental con- tract," which is extended by the Broad Form CGL Endorsement to include not only "any written . . . lease of premises" but also "any oral or written contract or agreement relating to the conduct of the insured's business." Second, Dryden says, the Worcester Trust nonpollution-related contract claims arise from matters having to do with the written lease of the Property. Its argument is untenable. The policies exempt an "incidental contract," viz., a lease, from the Contractual Liability Exclusion contained in the CGL Form, but not from Owned or Leased Premises Exclusion (k) in ___ the CGL Form. Under the Broad Form CGL Endorsement, the defini- tion of "incidental contract" is broadened by the Contractual Liability Coverage provision, but the Broad Form CGL Endorsement leaves Owned or Leased Premises Exclusion (k) in full force with reference to Contractual Liability Coverage. Thus, by clear implication Owned or Leased Premises Exclusion (k) bars the extended Contractual Liability Coverage in relation to an "inci- dental contract."  We therefore conclude, as did the district court, that 14 the property damage coverage described in these liability poli- cies imposed no duty upon the defendant insurers to defend Dryden in the Worcester Trust action. Furthermore, since the duty to indemnify is narrower than the duty to defend under the primary liability policies, Waltham Indus. Labs. Corp., 883 F.2d at 1099, __________________________ the district court correctly ruled as well that the defendant insurers were under no duty to indemnify Dryden for any property damage recoveries by Worcester Trust.7  B. Personal Injury Liability Coverage B. Personal Injury Liability Coverage __________________________________ Under the Broad Form CGL Endorsement, the insurer is obligated to defend its insured, and to indemnify for any amounts its insured becomes legally obligated to pay, in any action for "damages because of personal injury . . . to which [the policy] ________ ______ applies, sustained by any person or organization and arising out of the conduct of [n]amed [i]nsured's business . . . ." (Emphasis added.) The term "personal injury" is defined as  (1) false arrest, detention, imprisonment, or malicious prosecution;  (2) wrongful entry or eviction or other inva- sion of the right of private occupancy;  (3) a publication or utterance  (a) of a libel or slander or other defamatory or despairing material, or  (b) in violation of an individual's  ____________________ 7We caution, however, that the ultimate resolution of the Worcester Trust action may affect the duty to indemnify under these liability policies. That is to say, should the evidence in the underlying Worcester Trust action against Dryden reveal that there was a covered occurrence, and should Worcester Trust be allowed to amend its complaint, Dryden would be entitled to indemnification for the damages recovered against it and for the costs of its defense. See Terrio v. McDonough, 450 N.E.2d 190, ___ ______ _________ 194 (Mass. App. Ct.), rev. denied, 453 N.E.2d 1231 (Mass. 1983). ___________ 15 right of privacy;  except publications or utterances in the course of or related to advertising, broad- casting, publishing or telecasting activities conducted by or on behalf of the [n]amed [i]nsured shall not be deemed personal inju- ry.  This personal injury coverage does not apply, however, "to lia- bility assumed by the [i]nsured under any contract or agreement." The district court ruled that Dryden had not alleged claims within the personal injury coverage for "wrongful entry or eviction or other invasion of the right of private occupancy," since "the wrongful eviction/personal invasion provisions of the applicable insurance could not have been intended to cover the kind of indirect and incremental harm that results to property interests from pollution." Dryden Oil Co. of New England, No. _______________________________ 92-40135, slip op. at 12 (citing County of Columbia v. Continen- __________________ _________ tal Ins. Co., 634 N.E.2d 946, 950 (N.Y. 1994)). The district _____________ court further noted the apparent incongruity which would obtain if pollution liability coverage were found under the "personal injury" clause despite the fact that "property damage" liability coverage is expressly barred by the Absolute Pollution Exclusion. Id.  ___ Although the Supreme Judicial Court has yet to address the matter, the Massachusetts Appeals Court has held that "the definition of personal injury on the [Endorsement] is very ____ limited." LaFrance v. Travelers Ins. Co., 594 N.E.2d 550, 551 _______ ________ ___________________ (Mass. App. Ct.), rev. denied, 598 N.E.2d 1133 (Mass. 1992) (the ____ ______ identically-defined term "personal injury" does not even include 16 "bodily injury") (emphasis added). Moreover, as we have noted, personal injury liability coverage obligates the insurer to indemnify for liability incurred for certain intentional acts by ___________ the insured, including: Group A false arrest, detention or impris- onment, or malicious prosecution; Group B the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy . . . ; Group C wrongful entry or eviction or other invasion of the right of private occu- pancy[.] Continental Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d ____________________ _____________________________ 370, 373 (1st Cir. 1991) (alteration in original). In Titan Holdings Syndicate, Inc. v. City of Keene, ________________________________ _______________ N.H., 898 F.2d 265, 267 (1st Cir. 1990) ("Titan"), the insurers ____ _____ Titan Holdings Syndicate, Inc. ("Titan") and Great Global Assurance Company ("Great Global") contended there was no duty to defend against claims "characterized as pleas of trespass and nuisance" brought by homeowners who alleged "continuous[] bombard[ment] by and expos[ure] to" noxious fumes, loud noise and bright light emanating from the insured's sewer treatment plant abutting their land.8 The insured argued that its "plant's  ____________________ 8The Seventh Circuit has decided, under Illinois and Missou- ri law, that "personal injury" coverage is not restricted by a clause which "applies only to the policy's property damage and bodily injury provisions." Pipefitters Welfare Educ. Fund v. _______________________________ Westchester Fire Ins. Co., 976 F.2d 1037, 1042 (7th Cir. 1992). __________________________ "[The insurer's] attempts to circumvent the plain language of the pollution exclusion in its policy are disingenuous and misleading indeed, they are nearly sanctionable and as such do not warrant any discussion." Id. It came to a similar conclusion ___ under Wisconsin law. Scottish Guar. Ins. Co. v. Dwyer, 19 F.3d _______________________ _____ 17 fumes, noise and light" constituted a wrongful entry of, or eviction from, the abutting homeowners' property, id. at 272, ___ hence came within the insurers' personal injury liability coverages for "wrongful entry" or "wrongful eviction." Finding no case law defining "wrongful entry," the Titan panel analogized _____ to an action for trespass under New Hampshire law which requires an intentional invasion. Id. (citing Moulton v. Groveton Papers ___ _______ _______________ Co., 289 A.2d 68, 72 (N.H. 1972)). As the complaint alleged no ___ intentional invasion of the abutting landowners' property, Titan _____ found no actionable wrongful entry claim under New Hampshire law. Id. The Titan panel also questioned though it did not decide ___ _____ "whether the alleged spreading of fumes, noise and light falls within the ordinary meaning of wrongful entry of property." Id. ___ at 272 n.7. Thus, as the Fifth Circuit has noted, Titan "did not _____ hold that the migration of fumes, noise and light constituted a wrongful entry . . . ." Gregory v. Tennessee Gas Pipeline Co., _______ __________________________ 948 F.2d 203, 209 (5th Cir. 1991). Finally, after observing that a wrongful eviction presupposes a landlord-tenant relationship, Titan, 898 F.2d at 272 (citing 52 C.J.S. Landlord & Tenant 455 _____ _________________  ____________________ 307, 309 (7th Cir. 1994) ("[C]overage for personal . . . injuries . . . is not subject to the pollution exclusion."). The Eleventh Circuit also has concluded that "[b]y its terms, the pollution exclusion clause does not apply to coverage under the personal injury endorsement . . . ." City of Delray Beach, Fla. v. ____________________________ Agricultural Ins. Co., 85 F.3d 1527, 1533 (11th Cir. 1996) _______________________ (Florida law). The Sixth Circuit, on the other hand, has come to the opposite conclusion under Michigan law. Harrow Prods., Inc. ___________________ v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1021-25 (6th Cir. 1995). _____________________ We need not consider whether the absolute pollution exclusion applies to the personal injury liability coverage under Massachu- setts law, since we conclude that the complaint alleges no claim within the "personal injury" coverage under these policies. 18 & 460(1)), the Titan panel concluded that the personal injury _____ liability coverage under the Titan policy was restricted to "wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies." Id. at 271-72. ___ Dryden urges the same analogy, especially since tres- pass is not necessarily an intentional tort under Massachusetts law. See Sheppard Envelope Co. v. Arcade Malleable Iron Co., 138 ___ _____________________ _________________________ N.E.2d 777 (Mass. 1956) (airborne emissions of cinders and other gritty materials, negligent or otherwise, constitute a continuing trespass). Its analogy simply does not fit. Not only have we decided that the wrongful conduct comprehended by the "personal injury" coverage afforded under policies like the present one amounts to an intentional tort under Massachusetts law, see ___ Continental Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d at ____________________ ____________________________ 373, but the Massachusetts tort of wrongful entry has yet to be extended beyond trespasses by landlords upon the leased premises. See Gidwani v. Wasserman, 365 N.E.2d 827 (Mass. 1977); Tinkham v. ___ _______ _________ _______ Wind, 65 N.E.2d 14 (Mass. 1946).9  ____  ____________________ 9Dryden relies on Scottish Guar. Ins. Co. v. Dwyer, 19 F.3d ________________________ _____ 307, 311 (7th Cir. 1994), which cites Titan as support for the _____ holding that "wrongful entry" equates with "trespass" under Wisconsin law, which, like Massachusetts law, does not require that an actionable trespass have been intentional. Even though the Dwyer panel did not take issue with the insurer's "as- _____ sert[ion] that the term `wrongful entry' has been used by Wiscon- sin courts in only one context the improper entry by a land- lord onto the leased property of a tenant," id., it reasoned ___ that "nothing [in the Wisconsin cases cited by the insurer] suggests that the tort [of wrongful entry] should be limited to landlord-tenant disputes." Id. The Dwyer panel went on to say: ___ _____ "When faced with a similar lack of controlling authority under New Hampshire law, [the First Circuit] concluded that the tort of wrongful entry `most closely resembles that of trespass.'" Id. ___ 19 Although there existed a landlord-tenant relationship between Worcester Trust and Dryden, the Worcester Trust complaint alleges claims by Worcester Trust, the landlord, against Dryden, the tenant. Dryden offers no authority for its unstated premise that a tenant in possession under a valid lease may be liable to its landlord for unlawful entry upon the leased premises under Massachusetts law. Since wrongful eviction likewise contemplates wrongful conduct by a landlord against its tenant, see Squeri v. ___ ______ McCarrick, 588 N.E.2d 22 (Mass. App. Ct. 1992), the Worcester _________ Trust claims against Dryden plainly do not come within the personal injury coverage for "wrongful entry or eviction" under Massachusetts law.   ____________________ (quoting Titan, 898 F.2d at 272). In doing so, Dwyer extended _____ _____ Titan beyond its rationale. _____ Titan equated the tort of wrongful entry with trespass under _____ New Hampshire law only because the panel was "unable to find any ___ New Hampshire cases defining a tort of wrongful entry." Titan, _____ 898 F.2d at 272 (emphasis added). Whereas Massachusetts case law has defined the tort of wrongful entry only in the context of an intrusion by the landlord upon the premises leased by its tenant. Against this inapposite decisional backdrop, therefore, we decline to broaden the scope of the Massachusetts tort of wrong- ful entry absent a clear signal from the Commonwealth courts, especially in the instant context where the insurance contract definition for "personal injury" liability is "very limited." LaFrance, 594 N.E.2d at 551.  ________ Absent some authoritative signal from the legislature or the courts of Massachusetts, we see no basis for even considering the pros and cons of innovative theories . . . . We must apply the law of the forum as we infer it presently to be, not as it might come to be. Although Massachusetts authority is sparse, we see no basis for applying any rule other than the traditional one. Dayton v. Peck, Stow and Wilcox Co. (Pexto), 739 F.2d 690, 694-95 ______ _________________________________ (1st Cir. 1984).  20 Dryden nonetheless argues that these Worcester Trust claims are embraced by the personal injury coverage as "other invasion[s] of the right of private occupancy." Titan addressed _____ the scope of liability coverage afforded by this clause under New Hampshire law.10 There, in addition to the policy issued by Titan, the City had a liability policy issued by Great Global, which afforded "personal injury" coverage for "`wrongful entry or eviction or other invasion of the right of private occupancy.'" __ _____ ___________ ___ _____ __ _______ _________ Titan, 898 F.2d at 272 (emphasis in original). _____ The Titan panel first observed that "an invasion of the _____ right of private occupancy need not involve `an appreciable and tangible interference with the physical property itself.'" Id. ___ (quoting Town of Goshen v. Grange Mut. Ins. Co., 424 A.2d 822, _______________ _____________________ 824 (N.H. 1980)).11 Given this "broad[]" construction of the  ____________________ 10Prior to the Titan decision, the Seventh Circuit had _____ determined, under the ejusdem generis rubric, that the term _______ _______ "other invasion" referred exclusively to invasions upon real property, not to a conversion of a vehicle. Red Ball Leasing, __________________ Inc. v. Hartford Accident & Indem. Co., 915 F.2d 306 (7th Cir. ____ _______________________________ 1990) (applying Indiana law). See also Hartford Accident & ___ ____ ____________________ Indem. Co. v. Krekeler, 491 F.2d 884 (8th Cir. 1974) ("personal __________ ________ injury" coverage for "wrongful entry or eviction, or other invasion of the right of private occupancy," embraces tort of trespass under Missouri law).  11The Titan panel noted that in Town of Goshen the New _____ _______________ Hampshire Supreme Court held that a sufficient claim for invasion of the right of private occupancy had been stated by the allega- tion that "the Town and its officials had wrongfully refused to grant a property owner permission to develop a subdivision, causing him economic hardships and monetary losses, and denying him the right of free enjoyment of his property . . . ." Titan, _____ 898 F.2d at 272. The New Hampshire Supreme Court accordingly ruled in Town of Goshen that the insurance coverage for 1983 _______________ claims, as distinguished from common-law claims, was unclear, then went on to construe the policy against the insurer. Town of _______ Goshen, 424 A.2d at 824-25. ______ 21 clause "other invasion of the right of private occupancy," Gardner v. Romano, 688 F. Supp. 489, 492 (E.D. Wis. 1988) (citing _______ ______ Town of Goshen), the Titan panel concluded, applying New Hamp- ______________ _____ shire law, that "the [homeowners' suit] alleges just such an invasion, and so is covered by Great Global's policy." Titan, _____ 898 F.2d at 273. The panel went on to observe that the matter might [have been] left there," id., but out of a concern for __ fairness it permitted "Great Global, on remand, to produce the type of evidence relied on in Town of Epping, if it exists," id., ______________ ___ to demonstrate that the parties to the insurance contract had not intended that the clause cover such an invasion.12  As the Massachusetts courts have yet to construe the clause "other invasion of the right of private occupancy," the only reliable interpretive guides available to us are the state- ment by the Massachusetts Appeals Court: "the definition of personal injury is very limited[,]" LaFrance, 594 N.E.2d at 551; ________ see also Losacco v. F.D. Rich Constr. Co., 992 F.2d 382, 384 (1st ___ ____ _______ _____________________ Cir.) (intermediate state appellate court opinion may afford reliable guidance in "ascertaining state law"), cert. denied, 114 ____ ______  ____________________ 12Titan noted that in Town of Epping v. St. Paul Fire & _____ _______________ ________________ Marine Ins. Co., 444 A.2d 496, 498 (N.H. 1982), the "[New Hamp- _______________ shire] Supreme Court agreed that the clause `other invasion of the right of private occupancy' lacks precise definition," Titan, _____ 898 F.2d at 272, with respect to the coverage for 1983 liabili- ty, as distinguished from coverage for common-law tort claim liability. "Explaining that the rule requiring ambiguous clauses to be construed in favor of the insured is only a presumption which can be defeated by evidence that the parties did not intend to provide for coverage for [civil rights and official liability] claims, [the New Hampshire Supreme Court adverted to] . . . extraneous evidence of the parties' intentions regarding coverage." Id. (citing Town of Epping, 444 A.2d at 499). __ ______________ 22 S. Ct. 324 (1993), and the principle of ejusdem generis, which _______ _______ holds that "`general terms which follow specific ones [are limited] to matters similar to those specified.'" Powers v. ______ Freetown-Lakeville Regional Sch. Dist. Comm., 467 N.E.2d 203, 207 ____________________________________________ n.8 (Mass. 1984) (quoting United States v. Powell, 423 U.S. 87, _____________ ______ 91 (1975)); see also Berniger v. Meadow Green-Wildcat Corp., 945 ___ ____ ________ __________________________ F.2d 4, 8 (1st Cir. 1991).  Under Massachusetts law, then, the phrase "other inva- sion of the right of private occupancy" would mean "other inva- sion of the [tenant's] right of private occupancy," since an actionable "wrongful entry or eviction" claim under Massachusetts law may be brought only by a tenant against its landlord. See ___ Gidwani, 365 N.E.2d at 830; Tinkham, 65 N.E.2d at 162; Squeri, _______ _______ ______ 588 N.E.2d at 24. Moreover, it is significant that this narrow- ing construction nonetheless leaves meaning to the term "other invasion," see United States v. Tortora, 922 F.2d 880, 887 (1st ___ ______________ _______ Cir. 1990) (doctrine of ejusdem generis applies if "the specific _______ _______ terms of an enumeration suggest a class which is not exhausted by the enumeration"), in that it would afford coverage for "personal injury" or liability claims brought by tenants against their landlords, claims "that are similar to but not encompassed by `wrongful entry or eviction.'" Bernstein v. North East Ins. Co., _________ ___________________ 19 F.3d 1456, 1458 (D.C. Cir. 1994) (racial discrimination by private landlord against prospective tenant is not an "other invasion"). See also Boston Hous. Auth. v. Atlanta Int'l Ins. ___ ____ ___________________ ___________________ Co., 781 F. Supp. 80, 84 (D. Mass. 1992) (racial discrimination ___ 23 by public housing landlord against tenants not an "other invasion of the right of private occupancy"). We accordingly conclude that the clause "wrongful entry or eviction or other _____ invasion of the right of private occupancy" does not comprehend ________ __ ___ _____ __ _______ _________ these Worcester Trust claims, which do not allege wrongful conduct by a landlord against its tenant. Therefore, as did the district court, we hold that the applicable "personal injury" liability coverage imposed no duty to defend or indemnify Dryden against the Worcester Trust claims. But cf. note 7 supra.  ___ __ _____ C. The "All Risks" Property Insurance Policy C. The "All Risks" Property Insurance Policy _________________________________________ The Travelers property insurance policy included a "Building and Personal Property Special Form" ("Special Form") that "insures against all risks of direct physical loss or damage except as otherwise provided in this form and other provisions of the policy which apply." The Dryden complaint alleges that Travelers must defend Dryden in the Worcester Trust action ______ because the "damages sought therein constitute and concern `risks of direct physical loss or damage' to 150 Worcester Center Boulevard." It further alleges that Travelers must indemnify _________ Dryden "for all sums which [Dryden] may become legally obligated to pay as damages on account of any and `all risks of direct and physical loss or damage' to the property known as 150 Worcester Center Boulevard." Dryden contends that the Special Form obli- gates Travelers to defend and indemnify because "the damages complained of by [Worcester Trust] are clearly covered by the policy" and "a consequent risk of any such damage is a lawsuit by ____ 24 [Worcester Trust], as Dryden's landlord, to recover the costs of such damage[]" from Dryden, its tenant. We do not agree. The Travelers property insurance policy imposes no duty to defend Dryden in suits for "physical loss or damage." Al- ______ though the policy affords Travelers the option to defend its ______ insured, Dryden does not contend that the option to defend ______ __ ______ constituted the requisite agreement, see Aetna Cas. & Sur. Co. v. ___ _____________________ Sullivan, 597 N.E.2d 62, 63 (Mass. App. Ct. 1992), upon which ________ might be predicated a duty to defend. Nor has Dryden demonstrat- ____ ed reason, see Dayton v. Peck, Stow and Wilcox Co. (Pexto), 739 ___ ______ __________________________________ F.2d 690, 694 (1st Cir. 1984) (court reluctant, sitting in diversity action, to extend state law), or authority for implying such a duty under Massachusetts law. Cf. Shell Oil Co. v. __ ______________ Winterthur Swiss Ins. Co., 15 Cal. Rptr. 2d 815, 848 (Cal. Ct. __________________________ App. 1993) (no implied duty to defend under "all risks" policy) (California law).  We therefore conclude, as did the district court, though for different reasons, that Travelers assumed no duty under the property insurance policy to defend Dryden in connec- tion with the Worcester Trust action. Since defendants have no duty to defend under their liability policies, and Travelers has no duty to defend under its "all risks" property insurance policy, we affirm the district court rulings rejecting Dryden's motion for partial summary judgment, and granting defendants' cross-motion for summary judgment, on the duty to defend under all the defendants' policies. The district court 25 concluded that the property insurance policy required Travelers neither to defend nor indemnify Dryden, since Worcester Trust alleges that all damage to the Property was caused by Dryden itself.  [The property insurance] policy insured Dryden Oil "against all risks of direct phys- ical loss or damage" to buildings and person- al property owned or occupied by Dryden Oil. This policy provides first-party coverage for claims by Dryden Oil that its own property had been damaged by a third party, not for ___ claims that it had damaged a third person's property. . . . The simple conclusion is that the policy in question afforded Dryden Oil protection for damage to its property (i.e., Dryden Oil is covered for losses it ____ suffers as a result of damage to its prop- erty) and not for damage [Dryden] caused to the Property. Dryden Oil Co. of New England, No. 92-40135, slip op. at 14. _____________________________ Dryden contends, however, that the "all risks" property insurance coverage does not depend upon who caused the damage to the Property. Moreover, neither Travelers nor the district court identifies policy language limiting the "all risks" coverage to damage caused by third parties.13 Finally, no one has cited, nor have we found, an unambiguous provision in the Travelers "all risks" property insurance policy excluding coverage for any damage to the Property caused by Dryden, the policyholder and tenant. See High Voltage Eng'g Corp., 981 F.2d at 600. Conse- ___ ________________________ quently, we are unable to discern a supportable basis for the  ____________________ 13The Insurance Environmental Litigation Association ("IELA") maintains in its amicus brief that the district court incorrectly limited the coverage afforded under the Travelers property insurance policy to property damage caused by a third party.  26 district court holding.14  We do not mean to suggest that Dryden necessarily can prevail on its claim for indemnity under the property insurance policy. The difficulties impeding indemnity coverage determina- tions involving latent perils, such as accumulations of waste and hazardous materials, may become almost unmanageable in the abstract setting preceding a judicial determination as to the nature and extent of any damage, its causes and timing. See ___ generally, Dale L. Kingman, First Party Property Policies and _________ ___________________________________ Pollution Coverage, 28 Gonz. L. Rev. 449, 471-72 (1993). Be that __________________ as it may, the declaratory ruling that Travelers had no duty to indemnify Dryden under the "all risks" property insurance policy _________ for any damage Dryden may have caused to the Property lacks discernible record support.15 Therefore, we vacate that portion of the declaratory judgment and remand for such further proceed-  ____________________ 14The only authority cited by Travelers is inapposite. See ___ Edward J. Gerrits, Inc. v. National Union Fire Ins. Co. of _________________________ __________________________________ Pittsburgh, Pa., 634 So. 2d 712, 713 (Fla. Dist. Ct. App.) ________________ (stating that an "all risk[s]" policy "is a first-party claim policy which insures [Gerrits] against physical damage or loss to the property brought about by some external cause other than the insured.") (per curiam), rev. denied, 645 So. 2d 452 (Fla. 1994). ___ ______ Unlike the "all risks" property insurance policy issued by Travelers, however, coverage under the Gerrits policy was ex- _______ pressly limited to "damage to the property insured from any external cause . . . ." Id.  __ 15Travelers represents in its appellate brief that "[t]he duty to defend [is] the issue primarily briefed by the parties to date" and "the duty to indemnify, if one exists, can be estab- lished only by further [factfinding] proceedings . . . ." Defendants-Appellees' Brief at 36 n.18. Regrettably, more focused advocacy, in the district court and on appeal, may well have enabled a definitive resolution of this claim in the first instance.  27 ings, consistent with this opinion and 28 U.S.C. 2201(a), as the district court in its sound discretion deems appropriate.  III III CONCLUSION CONCLUSION __________ Under their liability policies, Travelers and American Mutual have no duty to defend and indemnify Dryden against the claims asserted in the Worcester Trust action. There is no "property damage" coverage under the liability policies because the Worcester Trust claims are expressly excepted from coverage by the Absolute Pollution Exclusion or the Owned or Leased Premises Exclusion. There is no coverage under the liability policies for "wrongful entry or eviction or other invasion of the right of private occupancy," and thus no "personal injury" coverage, for the Worcester Trust claims against its tenant, Dryden, because wrongful entry, wrongful eviction, and "other invasion[s] of the right of private occupancy," contemplate wrongful conduct by a landlord against its tenant. Whatever coverage may be available under its "all risks" property insur- ance policy, Travelers has no obligation to defend Dryden in the Worcester Trust action, only an option to defend. Accordingly, as a matter of law, defendants neither breached a contractual duty to defend Dryden under any of their policies, nor a duty to indemnify Dryden under their liability policies.16 Consequently,  ____________________ 16After ruling that defendants were under no duty to defend or indemnify Dryden under any of their policies, the district court granted summary judgment for defendants on the dependent breach-of-contract claim as well. Dryden makes no contention that its breach-of-contract claim does not depend on the declara- 28 Dryden's claims under Mass. Gen. L. chapter 93A and chapter 176D fail as well.17 Finally, we are unable to discern a supportable basis for the district court ruling that there was no duty to indemnify Dryden under the Travelers "all risks" property insurance policy since Dryden itself caused the damage for which it seeks indemni- fication. Consequently, we vacate the declaratory ruling as to the duty to indemnify under the property insurance policy, as well as its denial of the breach-of-contract claim which is dependent on the unsupported declaratory ruling. Accordingly, these interdependent claims are remanded for such further pro- ceedings, consistent with this opinion and 28 U.S.C. 2201(a), as the district court in its sound discretion deems appropriate. Affirmed, in part, and reversed and remanded, in part; Affirmed, in part, and reversed and remanded, in part; _______________________________________________________ the parties shall bear their own costs. SO ORDERED. the parties shall bear their own costs. SO ORDERED. ______________________________________ __________  ____________________ tory rulings relating to the duty to defend and the duty to indemnify under defendants' policies.  17Dryden argues that defendants' "delays in responding to Dryden's requests for coverage and their changing positions with respect to their reasons for denying coverage" gave rise to viable claims for relief under Mass. Gen. L. ch. 93A and 176D. We do not agree. Under these statutes, "a claimant must estab- lish both that an unfair trade practice occurred and that the ____ ___ unfair trade practice resulted in a loss to the claimant." Alan ____ Corp. v. International Surplus Lines Ins. Co., 22 F.3d 339, 343 _____ _____________________________________ (1st Cir. 1994). Even assuming the alleged delays and vacilla- tions by defendants amounted to unfair trade practices, a matter we need not address, Dryden has not established that it sustained a loss as a result of the alleged unfair trade practices, since defendants were under no duty to defend.  29